**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ─────────────────────── : | | |
| YANPING QIU, : | | |
|         Plaintiff, : | | |
| : | | Civil Action No. 07-123 (SRC) |
|         v. : | | |
| : | | **OPINION** |
| MICHAEL CHERTOFF, Secretary of : | | |
| Homeland Security, et al., : | | |
| : | | |
|         Defendants. : | | |
| ─────────────────────── : | | |

APPEARANCES:

Yanping Qiu
435 Franklin Turnpike
Apartment 14
Mahwah, NJ 07430

PLAINTIFF PRO SE

Yanet Perez Noble
US ATTORNEY'S OFFICE
970 Broad Street
Room 700
Newark, NJ 07102

ATTORNEY FOR DEFENDANTS MICHAEL CHERTOFF, SECRETARY of HOMELAND
SECURITY, EMILIO GONZALEZ, DIRECTOR OF THE UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICE, PAUL NOVAK, DIRECTOR OF THE VERMONT
SERVICE CENTER and ROBERT S. MUELLER, DIRECTOR OF THE FEDERAL BUREAU
OF INVESTIGATION

**CHESLER, District Judge**

In this case, the Court must decide whether it has jurisdiction over an action seeking to compel the United States Citizenship and Immigration Service ("USCIS") to adjudicate an application for adjustment to lawful permanent residence status that has been pending for almost three years.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not in dispute: Plaintiff Yanping Qiu, proceeding *pro se*, was born in Beijing, China, and lawfully resides in the United States pursuant to an H-4 Visa.  She has received a MBA from Rutgers University and is currently employed at Praetorian Financial Group.  On January 21, 2004, she submitted an application to the USCIS to adjust her status to that of a permanent resident alien, also known as an I-485 application.  However, Plaintiff's application has not been adjudicated because the USCIS and the Federal Bureau of Investigation ("FBI") have not completed background checks that the Attorney General adopted in the aftermath of 9-11.  Because she is not a permanent resident of the United States, Plaintiff has paid higher tuition fees and was ineligible for certain student loans.  Plaintiff alleges that because of the delay in adjudicating (and, implicitly, approving) her application, she suffered a loss of $27,000.

On January 9, 2007, just shy of three years after Plaintiff filed her I-485 application, she instituted the present suit against Michael Chertoff, the Secretary of Homeland Security, Emilio Gonzalez, the Director of the USCIS, Paul Novak, the Director of the USCIS Vermont Service Center and Robert S. Mueller, the Director of the FBI.  Plaintiff's Complaint asks the Court to compel adjudication of her application, provide her with a notice of its approval and award compensatory damages.

Defendants have moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Plaintiff's Complaint asserts jurisdiction under the federal question statute, 28 U.S.C. § 1331, the mandamus statute, 28 U.S.C. § 1361, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.[1]  Pursuant to Federal Rule of Civil Procedure 78, the Court decides the motion on the papers submitted.

## II.    STANDARD FOR A MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a civil action for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  Under Rule 12(h)(3), the court is required to dismiss the action whenever it appears that the court lacks subject matter jurisdiction.  FED. R. CIV. P. 12(h)(3).  The plaintiff bears the burden of establishing subject matter jurisdiction.  *See, e.g.*, *Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 805 (3d Cir. 1981) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936)).  On a 12(b)(1) motion, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d

---

[1]  From the outset, the Court notes that the DJA does not independently confer subject matter jurisdiction on the federal courts.  *Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d 229, 232 (1st Cir. 1987); *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 253 (7th Cir. 1981); *Delavigne v. Delavigne*, 530 F.2d 598, 601 (4th Cir. 1976).  Likewise, the APA does not confer subject matter jurisdiction independent of 28 U.S.C. § 1331.  *Califano v. Sanders*, 430 U.S. 99, 105-07 (1977); 14A Charles Alan Wright, Arthur C. Miller & Edward H. Cooper, Federal Practice and Procedure § 3659, at 51 (3d ed. 1998) ("[P]laintiffs seeking relief are given the right to sue the government in a federal court by the [APA] but the subject matter jurisdiction basis is the general federal question statute").

Cir. 1977).

### III.    MANDAMUS JURISDICTION

Plaintiff argues that this Court has mandamus jurisdiction pursuant to 28 U.S.C. § 1361.

Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in

the nature of mandamus to compel an officer or employee of the United States or any agency

thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361 (2006).  The Supreme Court

has described mandamus relief under § 1361 as an "extraordinary remedy" which "will issue only

to compel the performance of 'a clear nondiscretionary duty.'"  *Pittston Coal Group v. Sebben*,

488 U.S. 105, 121 (1988); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("The

common-law writ of mandamus, as codified in 28 U. S. C. § 1361, is intended to provide a

remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the

defendant owes him a clear nondiscretionary duty"); *Work v. United States*, 267 U.S. 175, 177

(1925) (stating that "[m]andamus issues to compel an officer to perform a purely ministerial

duty" but "[i]t can not be used to compel or control a duty in the discharge of which by law he is

given discretion").  A "party seeking mandamus has the burden of showing that its right to

issuance of the writ is clear and indisputable."  *Will v. United States*, 389 U.S. 90, 96 (1967)

(quotations omitted).  The Third Circuit has explained that

> in order for mandamus to issue, a plaintiff must allege that an officer of the
> Government owes him a legal duty which is a specific, plain ministerial act
> "devoid of the exercise of judgment or discretion." An act is ministerial only
> when its performance is positively commanded and so plainly prescribed as to be
> free from doubt.

*Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987) (quoting

*Richardson v. United States*, 465 F.2d 844, 849 (3d Cir.1972) (en banc) (citations omitted), *rev.*

4

*on other grounds*, 418 U.S. 166 (1974)).  *See Work*, 257 U.S. at 177 (explaining that a duty is purely ministerial "where the officer can do only one thing").

## IV.    DISCUSSION

Plaintiff argues that Defendants owe her a non-discretionary duty to process her application within a reasonable time, which Defendants have failed to do by withholding adjudication for almost three years.  Defendants assert that there is no statutory or regulatory time period specified within which an I-485 application must be adjudicated; that the court lacks jurisdiction under the mandamus statute or the APA because Defendants' decision to withhold adjudication at this time falls within the ambit of their discretion; and that 8 U.S.C. § 1252(a)(2)(B) and 1252(g) preclude judicial review of adjustment of status decisions, including the pace of adjudication.

The first of these assertions is true.  There is no statutory or regulatory provision which specifies a time frame for adjudication of adjustment of status applications.  Defendants are also correct that their decision to withhold adjudication at this time falls within their discretion, thus precluding jurisdiction under the mandamus statute and the APA.  As to Defendants' final assertion, the Court declines to decide whether § 1252(a)(2)(B) and 1252(g) provide an independent bar to judicial review, as the conclusion that the Court otherwise lacks a basis for subject matter jurisdiction makes this determination unnecessary.

The authority of the Attorney General to adjust the status of an alien to permanent residence status is found in 8 U.S.C. § 1255(a), which provides that:

> The status of an alien who was inspected and admitted or paroled into the United States . . . *may* be adjusted by the Attorney General, *in his discretion* and under such regulations *as he may prescribe*, to that of an alien lawfully admitted for

permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (2006) (emphasis added).[2]

Defendants cite two district court cases, *Safadi v. Howard*, 466 F. Supp. 2d 696, 700 (D. Va. 2006), and *Grinberg v. Swacina*, — F. Supp. 2d ---, 2007 WL 840109 (S.D. Fla. Mar. 20, 2007), which held that the court lacked subject matter jurisdiction because the term "action" in § 1252(a)(2)(B)(ii) "'encompasses any act or series of acts that are discretionary within the adjustment of status process,' including the pace of [adjudication]," *Grinberg*, 2007 WL 840109 at * 3 (quoting *Safadi*, 466 F. Supp 2d at 698). *Safadi* and *Grinberg* also held that there was no jurisdiction under the mandamus statute or the APA, because the defendants had no clear, non-discretionary duty to adjudicate an I-485 application within a particular time period. *Grinberg*, 2007 WL 840109 at * 4; *Safadi*, 466 F. Supp. 2d at 700.

In *Serrano v. Quarantillo*, No. 06-5221 (DRD), 2007 WL 1101434 (D.N.J. Apr. 9, 2007), Judge Dickinson R. Debevoise of this court endorsed both holdings of *Safadi*. Judge Debevoise agreed that the lack of a non-discretionary duty precluded jurisdiction under 28 U.S.C. § 1361 and the APA, and that 8 U.S.C. § 1252(a)(2)(B) prohibited judicial review of the Attorney General's "actions or inactions" relating to the adjustment of a plaintiff's immigration status. 2007 WL 1101434 at * 2-3. *Serrano* presented facts indistinguishable from the case at bar. The

---

[2]  It should be noted from the outset that, while the text of 8 U.S.C. § 1255(a) refers to the Attorney General as the official who may grant an adjustment of status, the authority to adjudicate applications for adjustment of status has been transferred to the Secretary of Homeland Security and the USCIS.  *See* 6 U.S.C. §§ 271(b)(5), 557 (2006).  However, for ease and consistency, this Opinion refers to the Attorney General's discretion under § 1255(a).

plaintiff filed an I-485 application to adjust his immigration status.  Once two years and eight

months had elapsed since the filing of his application, the plaintiff sought to compel action by

bringing suit under the APA.[3]

Several cases from other districts, however, have held that there is a non-discretionary

duty on the part of immigration officials to adjudicate adjustment of status applications and have

granted mandamus relief to the plaintiffs.[4]  Some of these courts have pointed to the language of

8 C.F.R. § 209.2(f) as the source of Defendants' non-discretionary duty.  *Haidari v. Frazier*, No.

06-3215 (DWF/AJB), 2006 WL 2544922 at * 4 (D.Minn. Dec. 8, 2006); *Aboushaban v. Mueller*,

No. C 06-1280 BZ, 2006 WL 3041086 at * 2 (N.D. Cal. Oct. 24, 2006).  Section 209.2(f)

provides that:

The applicant *shall be notified* of the decision, and if the application is denied, of

---

[3]   *See also Li v. Chertoff* --- F.Supp.2d ----, 2007 WL 1098705 (S.D. Cal. Apr. 2, 2007)
(no jurisdiction to compel adjudication of I-485 application under the mandamus statute or the
APA because "no statute or regulation specifies a time period within which USCIS must act");
*Liberty Fund, Inc. v. Chao,* 394 F. Supp. 2d 105, 115 (D.D.C. 2005) (rejecting "the handful of
unpublished district court decisions in other circuits that have granted mandamus petitions based
solely on the length of a processing delay"); *Espin v. Gantner*, 381 F. Supp. 2d 261, 265
(S.D.N.Y. 2005) ("[T]he process of immigration status adjustment is not susceptible to
mandamus jurisdiction because it is wholly discretionary with the Attorney General"); *Hui Jin
Zheng v. Reno*, 166 F. Supp. 2d 875, 879 (S.D.N.Y. 2001) (holding that "there is no requirement
that [an application to adjust immigration status] be decided within a specific period of time").
*Cf. Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) ("The power of congress to exclude aliens
altogether from the United States, or to prescribe the terms and conditions upon which they may
come to this country, and to have its declared policy in that regard enforced exclusively through
executive officers, without judicial intervention, is settled by our previous adjudications"
(quoting *Lem Moon Sing v. U.S.*, 158 U.S. 538, 547 (1895))).

[4]  Most of these cases, however, do not cite to a statutory or regulatory source for the
defendants' non-discretionary duty.  *Duan v. Zamberry*, No. 06-1351, 2007 WL 626116 (W.D.
Pa. Feb 23, 2007); *Salehian v. Novak*, No. 06-459 (PCD), 2006 WL 3041109 (D. Conn. Oct. 3,
2006); *Valenzuela v. Kehl*, No. 3:05-CV-1764BF, 2006 WL 2474088 (N.D. Tex. Aug. 28, 2006);
*Paunescu v. I.N.S.*, 76 F.Supp.2d 896, 901 (N.D. Ill. 1999).

the reasons for denial. . . . If the application is approved, the director *shall record*
the alien's admission for lawful permanent residence as of the date one year
before the date of the approval of the application . . ..

8 C.F.R. § 209.2(f) (2006) (emphasis added).  Other sections of the regulations, which have been

cited to support the issuance of mandamus to compel adjudication, contain similar non-

discretionary language.  *See* 8 C.F.R. § 245.2(a)(5)(i) (2006) ("The applicant *shall be notified* of

the decision of the director and, if the application is denied, the reasons for the denial" (emphasis

added)); 8 C.F.R. § 245.6 (2006) ("Each applicant for adjustment of status under this part *shall*

*be interviewed* by an immigration officer" (emphasis added)).

However, the Court is not persuaded by those cases which have held that immigration

officials have a non-discretionary duty to adjudicate I-485 applications.  First, other sections of

the United States Code, which empower the Attorney General or the Secretary of Homeland

Security to adjudicate an application, are accompanied both by a statutory time period for

adjudication and an explicit provision granting applicants a right to judicial review.[5]  However,

in the case of an adjustment of status application, there is no similar provision establishing a

specific time frame for adjudication, nor an accompanying provision conferring a right to judicial

review.  This is an indication that, with respect to an application for adjustment of status,

---

[5]  *See, e.g.*, 8 U.S.C. § 1447(b) (2006) ("If there is a failure to make a determination
[upon an application for naturalization] before the end of the 120-day period after the date on
which the examination is conducted under such section, the applicant may apply to the United
States district court for the district in which the applicant resides for a hearing on the matter.
Such court has jurisdiction over the matter and may either determine the matter or remand the
matter, with appropriate instructions, to the Service to determine the matter"); 18 U.S.C. §
923(d)(2) (2006) ("The Attorney General must approve or deny an application for a license [to
deal or manufacture firearms] within the 60-day period beginning on the date it is received.  If
the Attorney General fails to act within such period, the applicant may file an action under
section 1361 of title 28 to compel the Attorney General to act").

Congress did not intend to limit the discretion of immigration officials by specifying a certain time period within which they must act.

Second, none of the regulations cited by other courts as the source for Defendants' non-discretionary duty speak to the issue of withholding adjudication. The phrases "shall be notified," "shall record," and "shall be interviewed" do not mean the same thing as "shall adjudicate." Further, these mandatory--i.e. non-discretionary--phrases have been cited in isolation, thus ignoring other sections of the regulations which allow Defendants to exercise discretion throughout the application process.[6] For instance, the USCIS may waive an adjustment interview, 8 C.F.R. §§ 245.6, 1245.6 ("[The adjustment] interview *may* be waived . . . when it is determined by the Service that an interview is unnecessary" (emphasis added)), and "*may* direct any necessary investigation" into an application. 8 C.F.R. § 103.2(b)(7) (2006) (emphasis added). *See Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 203 (3d Cir. 2006) ("The usual presumption is that 'may' confers discretion" (quoting *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005))).

The regulation that speaks most directly to the Defendants' discretion to withhold adjudication is 8 C.F.R. § 103.2(b)(18), which is entitled "Withholding adjudication."[7] Section

---

[6] *See Tyler v. Cain*, 533 U.S. 656, 662 (2001) (explaining that it is improper to "construe the meaning of statutory terms in a vacuum" because courts must "interpret the words 'in their context and with a view to their place in the overall statutory scheme'" (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989))).

[7] Section 103.2(b)(18) provides that:
 A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the

9

103.2(b)(18) confers discretion on immigration officers to withhold adjudication while applications are investigated.  It provides that an immigration officer "may" withhold adjudication every six months if he or she "*determines it is necessary* to continue to withhold adjudication pending completion of the investigation."  8 C.F.R. § 103.2(b)(18) (emphasis added); *see Jilin Pharm*, 447 F.3d at 203 (the phrase "deems it to be in the national interest" grants discretionary authority (citing *Zhu*, 411 F.3d at 295)).  The terms of the regulation clearly contemplate that certain applications may require lengthy investigations.

The Court finds it instructive that none of the cases holding that a non-discretionary duty exists to process I-485 applications have discussed the implications of § 103.2(b)(18).  Indeed, none of the cases cited by Plaintiff or revealed in the Court's own research which have held that a non-discretionary duty exists to process I-485 applications cite to § 103.2(b)(18).  Nor do these cases indicate in any way that they have considered the import of § 103.2(b)(18) as it relates to the question of the agency's discretion to withhold adjudication.

---

adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

The most commonly cited source for Defendants' non-discretionary duty, 8 C.F.R. §

209.2(f), imposes a non-discretionary duty to notify an applicant and record an admission for

lawful permanent residence after a decision has been made.[8]  The plain text of the regulation

does not place any limitation on the discretion of immigration officers before a decision has been

rendered.  There is no basis for reading § 209.2(f) to encroach on the discretion to withhold

adjudication explicitly granted in § 103.2(b)(18) because § 209.2(f) refers to Defendants' duties

*after* a decision has been reached, while § 103.2(b)(18) grants discretion to withhold adjudication

while an application is pending.  Given that the Attorney General is authorized to exercise "his

discretion . . . under such regulations as he may prescribe," 8 U.S.C. § 1255(a), the Court is

required to defer to his decision to withhold adjudication pursuant to a regulation that he was

entitled to promulgate.  *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,

467 U.S. 837, 843 (1984) ("[When a] statute is silent . . . with respect to the specific issue, the

question for the court is whether the agency's answer is based on a permissible construction of

the statute").

Of course, Congress may by law prescribe limits to the discretion that it grants to

executive officers.  *Work*, 267 U.S. at 177 ("[A] duty may be discretionary within limits. [An

executive officer] cannot transgress those limits, and if he does so, he may be controlled by

injunction or mandamus to keep within them").  Here, § 1255(a) limits the Attorney General's

discretion by providing that he may adjust the status of an alien only if certain prerequisites are

---

[8]  "The applicant shall be notified *of the decision*, and *if the application is denied*, of the reasons for denial. . . . *If the application is approved*, the director shall record the alien's admission for lawful permanent residence as of the date one year before the date of the approval of the application."  8 C.F.R. § 209.2(f) (emphasis added).

met.[9]  Section 1255(a) places no further limitations on the Attorney General's discretion.  Thus, §
1255(a) begins by granting the Attorney General discretion to grant an adjustment of status and
then places three limitations on the exercise of that discretion, none of which relate to the pace of
adjudication.  This is a further indication that Congress considered the decision to withhold
adjudication to be within the discretion granted to the Attorney General in § 1255(a).

In the principal case relied on by Plaintiff, *Nyaga v. Ashcroft*, 186 F. Supp. 2d 1244 (N.D.
Ga. 2002), *vacated as moot*, 323 F.3d 906 (11th Cir. 2003), the district court held that there was a
non-discretionary duty to process the plaintiff's diversity visa application.  Even assuming that
such a duty exists,[10] as discussed above, section 1255(a) differentiates between the issuance of a
visa and the adjustment of status.  The issuance of a visa is a prerequisite to the Attorney
General's exercising his discretion to adjust immigration status.  It does not serve as a limitation
on that discretion.

Finally, it is ill-advised for courts to interfere with otherwise unreviewable agency
decisions.  *Zheng*, 166 F. Supp. 2d at 879-80 (judicial creation of a duty to complete an
adjustment of status application within a specified time "would have the potential for
mischievous interference with the functioning of already overburdened administrative agencies"

---

[9]  The Attorney General may exercise his discretion if "(1) the alien makes an application
for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the
United States for permanent residence, and (3) an immigrant visa is immediately available to him
at the time his application is filed."  8 U.S.C. § 1255(a).

[10]  *But see* Li v. Chertoff, No. 06-13679 (LAP), 2007 WL 541974 (S.D.N.Y. Feb. 14,
2007) (no subject matter jurisdiction over complaint requesting that visa application be
adjudicated within a reasonable time); Zhang v. U.S. Citizenship & Immigration Serv., No. 05
Civ. 4086 (RJH)(AJP), 2005 WL 3046440 (S.D.N.Y. Nov. 8, 2005) (no duty to adjudicate visa
petition within specific time period).

(quoting *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1182 (2d Cir. 1978))).  When, as here, the

Court lacks power to review the ultimate agency decision and the agency's cases are backlogged,

granting the writ to compel adjudication would do nothing more than shuffle to the front of the

line those I-485 applicants canny enough to file a complaint in federal district court.  *Liberty*

*Fund*, 394 F. Supp 2d at 116 (noting that if the court were to grant mandamus relief it "would

simply move petitioners to the front of the queue, at the expense of other similarly situated

applicants").  As the *Safadi* court noted, the problem of administrative creep is properly

addressed through the political branches.  *Safadi*, 466 F. Supp. 2d at 701 & nn.6-7.

     To conclude, Plaintiff's application has not been adjudicated because USCIS and FBI

security checks are incomplete.  Therefore, pursuant to regulations that allow immigration

officers to direct investigations into I-485 applications and to withhold adjudication until those

investigations are complete, Defendants have not adjudicated Plaintiff's application.  Because

Defendants have discretion to withhold adjudication under 8 U.S.C. § 1255(a) and the

regulations promulgated thereunder, their decision to do so at this time is not "devoid of the

exercise of judgment or discretion."  *Harmon Cove Condominium Ass'n, Inc.*, 815 F.2d at 951.

Neither the statute nor the regulations prescribe a ministerial duty to adjudicate an adjustment of

status application which is "so plainly prescribed as to be free from doubt."  *Id.*  As Defendants

have no clear duty to perform a ministerial act for Plaintiff, the Court lacks mandamus

jurisdiction under 28 U.S.C. § 1361.

## V.     FEDERAL QUESTION JURISDICTION UNDER THE APA

     Jurisdiction is also unavailable under the federal question statute, 28 U.S.C. § 1331,

through the application of the APA.  Under the APA, "when an agency is compelled by law to

act within a certain time period . . . a court can compel the agency to act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).  However, "a court only has jurisdiction to compel an agency to act within a certain time period under the APA when the agency is compelled by law to act within a certain time period," *Li*, 2007 WL 1098705 at *6 (citing *Norton*, 542 U.S. at 65).  Additionally, the APA does not apply to agency action that is committed by law to the discretion of the agency.[11]  5 U.S.C. § 701(a)(2) (2006).  As discussed above, there is no statutory or regulatory provision compelling adjudication within a certain time period, and a decision by immigration officials to withhold adjudication is within their discretion under 8 U.S.C. § 1255(a) and 8 C.F.R. § 103.2(b)(7) and 103.2(b)(18).  Accordingly, the APA does not confer subject matter jurisdiction over Plaintiff's Complaint.

## VI.    APPROVAL OF APPLICATION AND MONEY DAMAGES

As the Court liberally construes the pleadings of a *pro se* party, to the extent that Plaintiff prays that the USCIS approve her I-485 application, the Court lacks jurisdiction to review the agency's ultimate decision.  8 U.S.C. § 1252(a)(2)(B)(ii) (2006) ("no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter [§§ 1151-1378] to be in the discretion of the Attorney General or the Secretary of Homeland Security").

Although the Defendants do not address the Court's jurisdiction over Plaintiff's claim for compensatory damages, the Court *sua sponte* notes that Plaintiff's Complaint does not provide a jurisdictional basis for awarding money damages.  The APA explicitly precludes money damages

---

[11]  The APA defines "agency action" to include a "failure to act."  5 U.S.C. § 551(13) (2006) ("'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act").

against the government,[12] and the DJA and mandamus statute likewise provide only equitable remedies.

## VII.   CONCLUSION

Because the Court lacks subject matter jurisdiction over Plaintiff's Complaint, Defendants' motion to dismiss will be **GRANTED**.  An appropriate form of Order will accompany this Opinion.

    s/ Stanley R. Chesler    
Stanley R. Chesler, U.S.D.J.

Date: May 15, 2007

---

[12]  *Dep't of the Army v. Blue Fox*, 525 U.S. 255 (1999) (money damages unavailable under the APA); 5 U.S.C. § 702 (2006).